UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DARRYL M. WHITEHURST,

        Plaintiff,

v.                                 Case No.  3:12-cv-601-J-34JRK

LIQUID ENVIRONMENTAL
SOLUTIONS, INC.,

        Defendant.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendant Liquid Environmental Solution's Corporation's Motion to Dismiss under Federal Rule of Civil Procedure 12(c) or, Alternatively, for Summary Judgment under Rule 56(a) (Doc. 42; Motion), which was filed on August 22, 2013.  On April 3, 2014, Plaintiff filed Plaintiff [sic] Motion to Show Cause Why This Case Should Not Be Dismissed and Defendants [sic] Summary Judgment Should Be Denied[1] (Doc. 80; Response).[2]  Accordingly, the Motion is ripe is review.

## I.    Procedural History

Plaintiff Darryl M. Whitehurst ("Whitehurst"), proceeding pro se, filed this action against his former employer Defendant Liquid Environmental Solutions, Inc., a/k/a Industrial

---

[1] Plaintiff did not file any affidavits or admissible evidence with the Response.  See generally Response.

[2] Because Plaintiff is proceeding pro se the Court has liberally construed his papers, giving them the benefit of the doubt at every turn.  See Kroger v. Florida, 130 F. App'x 327, 332 (11th Cir. 2005) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)), cert. denied, 546 U.S. 1151 (2006).

Water Services, Inc., ("LES") on May 21, 2012.  <u>See</u> Complaint (Doc. 1; Complaint).[3] Although Whitehurst does not organize the Complaint into separate counts, it appears that he asserts claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, <u>et.</u> <u>seq.</u>  <u>See</u> <u>id.</u> at 1, 2.

On June 20, 2012, LES filed Defendant Liquid Environmental Solutions Corporation's Answer, Affirmative and Other Defenses to Plaintiff's Complaint (Doc. 4; Answer).  LES filed the instant Motion and supporting exhibits on August 22, 2013.  <u>See</u> Motion; Declaration of Yuri Turovsky in Support of Defendant Liquid Environmental Solutions Corporation's Motion to Dismiss Under Federal Rule of Civil Procedure 12(c) or, Alternatively, for Summary Judgment under Rule 56(a) (Doc. 42-1; Turovsky Decl.); Deposition of Darryl M. Whitehurst (Doc. 42-2; Whitehurst Dep.); Declaration of James E. Kellett in Support of Defendant Liquid Environmental Solutions Corporation's Motion to Dismiss Under Federal Rule of Civil Procedure 12(c) or, Alternatively, for Summary Judgment under Rule 56(a) (Doc. 42-3; Kellett Decl.).  On September 5, 2013, Whitehurst filed Plaintiff [sic] Objection to Defendants [sic] Motion to Dismiss, or Alternatively, for Summary Judgment (Doc. No. 44; Objection). Thereafter, upon review of the docket, the Court noted that Whitehurst had not been given notice of the filing of a summary judgment motion and the requirements for opposing summary judgment.  As such, on December 5, 2013, the Court entered an Order striking the Objection and permitting Whitehurst to file a renewed response to the Motion for summary judgment by January 3, 2014.  <u>See</u> December 5, 2013 Order (Doc. 51).  Whitehurst failed

---

[3] The EEOC mailed Whitehurst's right-to-sue letter on February 14, 2012 (Doc. 1, Ex. A; RTS Letter).

to respond by the January 3, 2014 deadline, so on January 21, 2014, the Court entered an Order to Show Cause (Doc. 65; Order to Show Cause) directing Whitehurst to respond to the Motion for summary judgment and the Order to Show Cause by February 6, 2014. See Order to Show Cause. Thereafter, Whitehurst filed Plaintiff [sic] Request for Extension of Time (Doc. 68), which the Court struck for failure to comply with Local Rule 3.01(g), see February 12, 2014 Order (Doc. 69). The Court denied Whitehurst's second request for an extension of time to respond to the Order to Show Cause, see Plaintiff [sic] 2nd Request for Extension of Time (Doc. 70), but granted Whitehurst up to and including March 3, 2014, to respond to the Order to Show Cause and to file a response to the Motion for summary judgment, see February 20, 2014 Order (Doc. 71).

On March 3, 2014, Whitehurst filed Plaintiff [sic] Response to Defendants [sic] Motion for Summary Judgment (Doc. 73). However, upon review of Whitehurst's renewed response and the docket, the Court determined that the Clerk of Court again failed to enter a Summary Judgment Notice, and thus, Whitehurst never received the Notice. As such, the Court entered an Order directing the Clerk of Court to enter a Summary Judgment Notice and ordering Whitehurst to file a renewed memorandum in response to LES's Motion for summary judgment, as well as a response to the Order to Show Cause, by April 3, 2014. See March 4, 2014 Order (Doc. 75). The Clerk of Court entered the Summary Judgment Notice on March 5, 2014 (Doc. 76), and Whitehurst filed the Response on April 3, 2014. Despite the Court's direction in the Summary Judgment Notice, Whitehurst again presented no evidence with his Response. Instead, the Response is limited to unsworn argument.

## II.     Background[4]

LES specializes in the collection, treatment, and disposal of non-hazardous liquid and organic waste streams.  Turovsky Decl. ¶ 4.  Employees of LES perform these services with modern vacuums, tankers and support vehicles.  Id.  LES employed Whitehurst as a driver of one of the vacuum trucks at its Jacksonville, Florida facility from January 1, 2010, until his discharge on March 9, 2010.  Id. ¶ 5.  Whitehurst testified that he believed he was "good at [his] job[,]" that he was never late, and that he went to work every day.  Whitehurst Dep. at 57.

Whitehurst's claims arise out of a series of confrontations and disputes between himself and two other LES employees, David Coates ("Coates") and Donald LaBell ("LaBell").  See id. at 52-53, 61-63, 68-69, 90-97, 103-04, 107, 110-14; see (Doc. 42-3, Exhibit A; Kellett Decl., Ex. A); (Doc. 42-3, Exhibit B; Kellett Decl., Ex. B); (Doc. 42-3, Ex. C; Kellett Decl., Ex. C).  LES employed Coates and LaBell from January 1, 2010, until their termination on March 9, 2010.[5]  Turovsky Decl. ¶¶ 8, 11.  At the time LES terminated Coates's employment, Coates held the position of Field Services Manager, and was responsible for coordinating the cleaning of industrial storage tanks owned and operated by LES's customers.  Id. ¶ 9.  Additionally, Coates assigned work to and scheduled LES Service

---

[4] Unless otherwise noted, the facts recited herein are undisputed based on the information provided by the parties.  For the purposes of resolving LES's Motion for summary judgment, the Court views all disputed facts and reasonable inferences in the light most favorable to the nonmoving party.  See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).  The Court notes that these facts may differ from those ultimately proved at trial.  Id.

[5] Yuri Turovsky, the Plant Manager of LES's Jacksonville facility, was Coates's direct supervisor.  Turovsky Decl. ¶ 8.  LaBell's supervisor was LES's Regional Sales Manager.  Id. ¶ 11.

Technicians.  Id.  At the time LES terminated LaBell's employment, LaBell held the position of Account Executive, in which he was responsible for marketing LES's services to potential customers and negotiating contracts with new customers.  Id. ¶ 12.  No employees reported to Coates or LaBell, neither Coates nor LaBell had direct supervisory authority over any employees, and neither Coates nor LaBell had the authority to hire, discharge, or discipline any employees.  Id. ¶ 10, 13.

In the Complaint, Whitehurst references "(2) White-Gay males," whom he identified in his deposition as Coates and LaBell.  See Whitehurst Dep. at 52.  Whitehurst alleges that Coates and LaBell "created an extremely hostile work environment with verbal threats[.]"  Complaint at 4.  His hostile work environment claim is based on his belief that Coates and LaBell are homosexual because he saw them "exemplifying feminine characteristics" including "[t]alking nose to nose" with each other while Coates sat on a desk with LaBell between his legs.[6]  Whitehurst Dep. at 52.  Additionally Whitehurst testified that LaBell said "we're going to kiss later" and that Coates and LaBell were walking around LES's Green Cove Springs, Florida facility "twisting all in each other's face."  Id. at 52-53.  However, Whitehurst also testified that other than his complaints, he never saw Coates and LaBell "act in a sexual manner towards any men on the job site[.]"  Id. at 53-54.  Further, LES's Jacksonville Plant Manager, Yuri Turovsky ("Turovsky") testified that "[d]uring the time that I worked with Mr. Coates and Mr. LaBell, I saw no evidence, and heard no comments from others, that either man was gay."  Turovsky Decl. ¶ 14.

---

[6] Additionally, Whitehurst testified that "[w]hen two men talking nose to nose to each other, lips a sixteenth of an inch – I mean, this close together talking. . . . They're gay."  Whitehurst Dep. at 53.

### A.    January 2010 Incident

At some point in January 2010, Whitehurst and Coates were involved in an incident in which Coates yelled at Whitehurst and "threaten[ed] to hit [Whitehurst] in the face with his fists."[7]  Whitehurst Dep. at 61.  About fifteen minutes later, Coates said to Whitehurst, "Your mama didn't teach you about sucking."[8]  Id. at 90-91.  Whitehurst reported Coates's "harassing behavior" to Turovsky.  Id. at 61-62, 102; Kellett Decl., Ex. A at 1.  Following Whitehurst's complaint, Turovsky met with Coates, and thereafter told Whitehurst that he, Whitehurst, and Coates would meet to discuss what happened.  Whitehurst Dep. at 102.  However, before the scheduled meeting, Coates apologized to Whitehurst, and Whitehurst gave Coates a "handshake and a man-hug," which Whitehurst described as a "pat on the shoulder."  Id. at 62, 102.  Coates reciprocated the gesture.  Id. at 62.  Whitehurst then told Turovsky to cancel the meeting, informing Turovsky that the incident was "water under the bridge."  Id. at 62-63; 102.

When he came to work the next day, a co-worker informed Whitehurst that after he left the previous day, LES management was "yelling and talking, hollering at [Coates], calling

---

[7] In his Amended Charge of Discrimination (Amended Charge), dual-filed with the Jacksonville Human Rights Commission ("JHRC") and the EEOC, Whitehurst asserts that "[b]eginning on or about January 12, 2010, I was subjected to harassment by Mr. David Coates[.]" Kellett Decl., Ex. A at 1.  In his Complaint filed with the JHRC (JHRC Complaint), Whitehurst asserts that "[o]n or about 1/27/2010, I, Darryl M. Whitehurst, was subjected to constant criticism pertaining to my moral up-bringing, by the upper management in reference to referring to my now deceased Mother as 'Yo Mamma Didn't Teach You About Sucking', and now deceased Father as 'Yo Daddy Didn't Teach You Nothing Either', . . . I was subjected to Cursing and Yelling at me, in reference to calling me a 'F - king idiot, multiple times with a close fist, while displaying a Fit of Rage, less than a foot from my face[.]" Kellett Decl., Ex. B at 1 (emphasis in original).  In the Motion, LES represents that "[i]n other writings this incident was described as taking place on January 20[.]"  Motion at 5 n.5.  The precise date on which these alleged events occurred is not material for purposes of deciding the Motion.

[8] The vacuum truck driven by Whitehurst operates by "suck[ing] out all of the sludge out of a tank."  Whitehurst Dep. at 90.

him a liar[.]" Id. at 102-103.  Soon thereafter, LES sent Coates to work on an assignment in New Orleans for two weeks.  Id. at 103-104.  Upon his return, Coates told Whitehurst that Whitehurst "was the cause of him being shipped" to do the job in New Orleans and that in New Orleans, "he had to stay in a rat hole, flee-infested motel."  Id. at 104.  Additionally, Coates told Whitehurst that "[i]t was all [his] fault and [he] was going to pay for it."  Id.

### B.     February 2010 Incidents

Whitehurst next reported that on or about February 13, 2010, Coates referred to him as "boy" and "sunshine."  Kellett Decl., Ex. A at 1, Ex. B at 2.  Thereafter, on either February 15 or 16, 2010, Coates and LaBell approached Whitehurst, and LaBell "front hugged" Whitehurst and said 'Happy Valentines Day.'"  Id., Ex. B. at 2; Whitehurst Dep. at 91. Whitehurst reacted by breaking loose and pushing LaBell back, telling him "to back-up off [him]" and that "[he] don't play."  Kellett Decl., Ex. B at 2, Ex. C at 1; Whitehurst Dep. at 91-92.  Next, on either February 15 or 16, 2010, LaBell grabbed Whitehurst "by the butt."  Kellett Decl., Ex. B at 2.  In response, Whitehurst said, "What the Hell, man I don't play that[,]" to which LaBell said, "I thought you were on the team."[9] Id.  Thereafter, on February 18, 2010, Coates "grabbed [Whitehurst] by the shoulders, quickly wrapped his arms around [him] and began to press his body against [him] from behind" in what Whitehurst described as a "homosexual manner."  Id. at 3.  In response, Whitehurst said to Coates, "What the Hell?" and looked at Coates "like he was crazy."  Id.  Last, on February 19, 2010, Coates approached Whitehurst from behind, pressed his chest against Whitehurst's back, and asked

---

[9] This incident took place in front of Coates.  Kellett Decl., Ex. B at 2.

Whitehurst if everything was alright.  Id.  Whitehurst quickly shook Coates off his back and told Coates he needed to "back up off [him]."  Id.  Coates complied.  Id.  Thirty minutes later, Coates returned and said to Whitehurst, "I just got off the phone with Don [LaBell], and he said for me to give you a big huge [sic] for him."  Id.  Whitehurst responded, "You're not fixing to huge [sic] me, I have told ya'll I don't play that crap."  Id.

### C.    Whitehurst Reports the Alleged Harassment

On the afternoon of Friday, February 19, 2010, Whitehurst went to LES's Transportation Supervisor James McDonald's (McDonald) office to report Coates's and LaBell's harassment.  Whitehurst Dep. at 97; Turovsky Decl., Ex. A at 2.  McDonald was busy and unable to speak with Whitehurst at the time, so Whitehurst was only able to tell McDonald that he did not want to work with Coates.  Whitehurst Dep. at 98.  McDonald told Whitehurst they would talk later.  Id. at 97, 98.  The next day, McDonald sent Whitehurst a text message about Monday's job.  Id. at 98.  In response to the text message, Whitehurst called McDonald and reported the alleged harassment.  Id. at 98-99.[10]  McDonald told Whitehurst that he was going to call corporate and then call Whitehurst back.  Id. at 99.  McDonald called Whitehurst that same day and told him that this was a "serious matter," and that he did not want Whitehurst to tell anyone about it because it "could jeopardize a lot of stuff [they had] planned for the company[.]"  Id.  McDonald asked Whitehurst to prepare a written complaint and said he would be in the office at 7:00 a.m. the following Monday.  Id. at 99-100.  McDonald also told Whitehurst that he would not have to return to work at the

---

[10] Whitehurst testified that he told McDonald that Coates and LaBell "were acting like they were homosexuals[,]" that "they were attacking [him] down [in the Green Cove Springs Facility,]" and that he "couldn't work under those conditions."  Whitehurst Dep. at 99.

Green Cove Springs Facility with Coates. <u>Id.</u> at 98, 100.  Over the weekend, Whitehurst prepared a written statement as requested and brought it to McDonald on the morning of Monday, February 22, 2010. <u>Id.</u> at 100, 125; <u>see</u> Kellett Decl., Ex. C.[11]

When Whitehurst met with McDonald on February 22, 2010, LES Human Resources Manager Joel Aguirre ("Aguirre") joined them by calling in from his office in Dallas, Texas. Whitehurst Dep. at 67-68; Turovsky Decl., Ex. A at 3.  Aguirre told Whitehurst that he would come to Jacksonville to meet with him and conduct an investigation.  Whitehurst Dep. at 67-68; Turkovsky Decl., Ex. A at 3.  Aguirre also told Whitehurst that he "take[s] this incident very seriously[,]" that he would tell Coates and LaBell to have no further contact with Whitehurst, and that Whitehurst should not have any contact with them, either.  <u>Id.</u> at 69.

**D.    Whitehurst's and Coates's Fight**

Before Aguirre made the trip to Jacksonville to meet with Whitehurst, Whitehurst and Coates had a physical altercation inside LES's receiving office on February 26, 2010. <u>Id.</u> at 107, 109-114.  On that day, unaware that Coates was in the receiving office, Whitehurst was delivering certain papers to the office.  <u>Id.</u> at 107.  According to Whitehurst, Coates was "hid[ing] on the side of the copy machine." <u>Id.</u>  When Whitehurst walked by, Coates grabbed Whitehurst by the arm, and while doing so, Coates "had his hands in his pocket, fixing to grab his knife." <u>Id.</u> at 109-10, 111.[12]  Whitehurst reacted by holding up his arms and pushing back against Coates.  <u>Id.</u> at 111.  Coates lost his footing, and Whitehurst got behind him,

---

[11] Whitehurst limited his Complaint to the incidents that occurred between February 15 and February 19, 2010.  <u>See</u> Kellett Decl., Ex. C.

[12] In his JHRC Complaint, as well as his Amended Charge, Whitehurst does not mention that Coates had a knife in his pocket during their altercation.  <u>See</u> Kellett Decl., Exs. A, B.

grabbed him "hand-in-elbow" around the back, and pushed Coates's leg down so his knee was on the floor.  Id.  Whitehurst held Coates down such that Whitehurst had his knees behind Coates's forearms so, according to Whitehurst, Coates could not reach in his pockets.  Id.  Whitehurst acknowledges that during the altercation, he called Coates a "motherf - - - er" once or twice.  Id. at 113-14.  During this altercation, LES employee Jesse Pollard ("Pollard") came in to the receiving office and told Whitehurst to let Coates go, at which time Coates got up and ran out across the street.  Id. at 112.  As a result of the fight, Coates required medical attention and was taken to an acute care facility but was then referred to an emergency room due to the nature of the injuries.  Turovsky Decl., Ex. A at 1.  Ultimately, Coates spent the night in the hospital for observation of his injuries.  Id.[13]

After the fight, LES obtained witness statements from a number of employees.  LES employee Nadette Alfonso ("Alfonso") prepared a written statement in which she stated, "Darryl [Whitehurst] ended up having David [Coates] in a head lock. . . . I smacked Darryl upside the head yelling for him to stop. . . . David while wrestling back and forth with Darryl pulled the top drawer of the file cabinet out and hitting himself across the face, nose and head."  Turovsky Decl., Ex. B.  Alfonso was injured when she tried to move a storage cart out of the way and Whitehurst and Coates fell into the cart, causing her left hand to be crushed between the counter top and the cart.  Id.  LES employee Dannielle Messer prepared a written statement In which she stated, "I turned to see what had happened and Darryl [Whitehurst] was chocking [sic] David [Coates] from behind.  Darryl proceeded to run

---

[13] In his Amended Charge Whitehurst asserts, "I never fought Mr. Coates, just held him until help arrived."  Kellett Decl., Ex. A at 2.

David into the file cabinet and still had David in a choke hold." Turovsky Decl., Ex. C. Pollard prepared a written statement in which he said, "Danielle [sic] Messer ran out of the office yelling, 'Help, Help.' As I came in, I looked to the left and saw David Coates being choked by Darryl Whitehurst. I had to pry Darryl's arm from around David's throat." Turovsky Decl., Ex. D.

### E.   LES Terminates Whitehurst, Coates, and LaBell

Aguirre traveled to Jacksonville and met with Whitehurst on Monday, March 1, 2010,[14] in a sandwich shop. Whitehurst Dep. at 68.[15] Thereafter, on March 9, 2010, LES terminated Whitehurst, Coates, and LaBell. Turovsky Decl., Exs. E-G. Whitehurst's termination letter states:

> It has been reported that, on February 26, 2010, you engaged in a physical altercation with another employee, which included your grasp of his throat in a way that constricted his breathing. You had to be physically separated from him by others, and your actions resulted in that employee and another requiring medical treatment. Witnesses confirm this.
>
> When I questioned you about this incident you did not deny such conduct but simply said you could not recall what happened.
>
> You received a copy of LES policies which state that there is zero tolerance for fighting in the workplace. As a result, your employment with LES is terminated effective today.

Id., Ex. E.  Coates's termination letter states that Coates was "engaged in a physical altercation with another employee on February 26, 2010" and that Coates "admitted to

---

[14] LES asserts Aguirre met with Whitehurst on March 1, 2010. Motion at 10. Whitehurst does not recall on which day the meeting took place. Whitehurst Dep. at 68.

[15] Whitehurst asserts that Aguirre told him he would come to Jacksonville on Wednesday, February 24, 2010. Whitehurst Dep. at 68, 69; see also Kellett Decl., Ex. B at 4. Aguirre testified that he would come to Jacksonville on either Wednesday, February 24, 2010, or Monday, March 1, 2010. Id. at 68. This disputed fact is not material for purposes of resolving this Motion.

brushing against, grabbing and cursing at this same employee on other occasions." Id., Ex. F.  The letter also stated that Coates violated LES policies and "failed to maintain these standards of conduct required of LES employees." Id.  LaBell's termination letter states that "[d]uring the course of an investigation into allegations of workplace misconduct you admitted to slapping another employee 'on his butt,' simply because you thought it was 'a great time to startle him.' You then proceeded to 'hug' this employee, something you admitted to having done before." Id., Ex. G.  The letter also states that LaBell failed to maintain the "standards of conduct required of LES employees[.]" Id.

As a result of the fight between Whitehurst and Coates, criminal charges were filed against Whitehurst for battery.  Whitehurst Dep. at 128-29.  Whitehurst was convicted of these charges and sentenced to two days in jail and four month's probation, and was required to attend an anger management program. Id. at 129.  Additionally, LES's worker's compensation insurance carrier, the New Hampshire Insurance Company, sued Whitehurst seeking $15,000.00 for payments made by the insurer to Coates for his injuries and medical treatment resulting from the fight.  Id. at 140-41.

Whitehurst filed a petition for injunctions against Coates and LaBell "to keep them away from [him]."  Id. at 72-73.  And Coates and LaBell both filed for injunctions against Whitehurst.  Id.  The court denied Whitehurst's request for an injunction but granted Coates's request.  Id. at 73.[16]

---

[16] The record does not indicate whether the court granted LaBell's request for an injunction.

III.    **Standard of Review**

A.      **Motion for Judgment on the Pleadings**

Judgment on the pleadings is proper when there are no issues of material fact, and the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 12(c); Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir. 1996).  As such, a court should enter judgment on the pleadings only "when material facts are not in dispute and judgment can be rendered by looking at the substance of the pleadings and any judicially noticed facts." Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998). "For purposes of a motion for judgment on the pleadings, all the non-moving party's pleadings are taken as true, and, if denied, the moving party's allegations are taken as false." See United States v. Kahn, No. 5:02-CV-230-OC-10GRJ, 2003 WL 22384761, at *2 (M.D. Fla. Sept. 2, 2003) (citing Stanton v. Larsh, 239 F.2d 104, 106 (5th Cir. 1956)).[17]

Rule 7(a), Federal Rules of Civil Procedure ("Rule(s)"), defines "pleadings" as complaints, counterclaims, crossclaims, answers, and court-ordered replies to answers. See Fed. R. Civ. P. 7(a).  While a court's determination of a motion for judgment on the pleadings is ordinarily limited to a review of such "pleadings," certain documents attached to a complaint may also be considered on such a motion.  See Tassinari v. Key West Water Tours, L.C., 480 F. Supp. 2d 1318, 1320 (S.D. Fla. 2007); Fed. R. Civ. P. 10(c).  Indeed, the Eleventh Circuit Court of Appeals has recognized that pursuant to the incorporation by reference doctrine, attachments to pleadings may properly be considered on a motion for

---

[17] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

judgment on the pleadings if the attachments are central to the plaintiff's claim, and are undisputed in that their authenticity is not challenged.  See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

However, Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).  Thus, "if the court relies upon matters outside of the pleadings, the motion is converted to a motion for summary judgment."  Quinnie v. Atl. Marine Holding Co., CV No. 06-0633-KD-C, 2007 WL 582083, at *1 (S.D. Ala. Feb. 21, 2007).  Here, as the parties rely on matters beyond the pleadings, the Court has construed the Motion as one seeking entry of summary judgment.  See id. at *3 n.2.

## B.    Motion for Summary Judgment

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[18]  An issue is genuine when the evidence is such that a reasonable jury

---

[18] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amendments.

could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."  Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.  In determining whether summary judgment is appropriate, a court "must view all evidence and

_____

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).  "Where the nonmoving party has failed to make a sufficient showing 'to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' there exist no genuine issues of material fact." <u>Mize</u>, 93 F.3d at 742 (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)).

Of course, "pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998).  However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." <u>Brown v. Crawford</u>, 906 F.2d 667, 670 (11th Cir. 1990).  Although courts show leniency to pro se litigants, courts "will not serve as de facto counsel or 'rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Nalls v. Coleman Low Fed. Inst.</u>, 307 F. App'x 296, 298 (11th Cir. 2009) (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia</u>, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## IV.   Discussion

### A.   Whitehurst's Complaint is Untimely

"Before filing suit for discrimination under Title VII, a plaintiff must exhaust certain administrative remedies." <u>Perry v. S. Wine Spirits</u>, 511 F. App'x 888, 889 (11th Cir. 2013) (citing <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1317 (11th Cir. 2001)).  One requirement

is that a plaintiff must file his civil complaint within 90 days of receiving a right-to-sue letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1).[19]  If a defendant contests the issue of whether the complaint was timely filed, the plaintiff bears the burden of establishing that he met the 90 day filing requirement.  Green v. Union Foundry Co., 281 F.3d 1229, 1234 (11th Cir. 2002).  Notably, the 90 day deadline is like a statute of limitations, and "Title VII . . . actions may not be brought more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge."  Santini v. Cleveland Clinic Fla., 232 F.3d 823, 825 (11th Cir. 2000).

LES maintains that Whitehurst's Complaint is untimely because he filed the Complaint 97 days after the EEOC mailed his right-to-sue letter.  See Motion at 16-17.  There is no dispute that the EEOC mailed the right-to-sue letter on February 14, 2012.  See RTS Letter. Whitehurst, who bears the burden of establishing the timeliness of his filing, testified that he "guess[ed]" he received the right-to-sue letter "a few days after February 14th."  Whitehurst Dep. at 51.  Notably, "when the date of receipt of the [right-to-sue letter] is in dispute, the [Eleventh Circuit] has applied a presumption of three days for receipt by mail, akin to the time period established in [Rule] 6(e)."  Kerr v. McDonald's Corp., 427 F.3d 947, 953 n.9 (11th Cir. 2005) (citing Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1342 (11th Cir. 1999)). Therefore, assuming Whitehurst received the right-to-sue letter "a few days after" or even three days after mailing, the 90 day limitations period expired on Thursday, May 17, 2012.

---

[19] Title VII provides that "[w]ithin ninety days after the giving of . . . notice [of dismissal of the charge] a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved[.]" 42 U.S.C. § 2000e-5(f)(1).

Because Whitehurst did not file his Complaint until May 21, 2012, and has failed to present evidence to otherwise rebut the fact that 94 days elapsed from the presumptive date of receipt to the date of filing, Whitehurst has failed to satisfy his burden. See Green, 281 F.3d at 1234; see also Curry v. HSBC Tech. & Servs., LLC, No. 6:11-cv-963-Orl-36GJK, 2013 WL 2039091, at *2-3 (M.D. Fla. May 15, 2013) (finding that the plaintiff failed to meet her burden of satisfying the 90 day filing requirement where the plaintiff was unable to recall the exact date on which she received her right-to-sue letter).  Thus, summary judgment is due to be entered in favor of LES as to Whitehurst's Title VII claims.  Nevertheless, to provide a complete record, the Court will address the merits of this action and examine the sufficiency of Whitehurst's claims.

## B.    Hostile Work Environment

Although Whitehurst's Complaint is a far cry from a model of lucid pleading, based upon Whitehurst's allegations and the facts in the record, the Court construes Whitehurst's claim as one for hostile work environment harassment.  Relevant to this claim, Whitehurst alleges that "[o]n February 22, 2010, Plaintiff filed a notarized Sexual Harassment Complaint[.]"  Complaint ¶ 9.b.  Additionally, Whitehurst alleges that "Defendants, after receiving the witness statements, now had full knowledge that the harassment was sufficiently severe where the (2) White-Gay males created an extremely hostile work environment with verbal threats[.]" Id. ¶ 9.c.  Further, Whitehurst asserts that "Defendants deliberately force [sic] Plaintiff to work in the same proximity of the managers being (2) White-Gay males while in an extreme hostile work environment, causing Plaintiff to alter the terms and conditions of employment and create a discriminatorily abusive working

environment." Id. ¶ 9.e. Also, Whitehurst ends each sub-paragraph under paragraph nine with a variation on the following allegation: "The managers being (2) White males, (2) White-Gay males treated similarly situated employees outside Plaintiff protected class more favorably than Plaintiff." Id. ¶ 9.a-j.[20]

LES asserts that Whitehurst cannot establish a hostile environment claim because he has failed to demonstrate that the alleged harassment was based on sex. See Motion at 17-20. Rather, LES maintains that Whitehurst has conceded that Coates's and LaBell's conduct during the week of February 15 was not motivated by Whitehurst's sex but was instead spurred by "revenge." Id. at 20. Specifically, LES argues that Coates's and LaBell's alleged harassment was in response to Whitehurst's complaint to Turovsky regarding Coates's alleged mistreatment of Whitehurst, which resulted in Coates being sent to work in New Orleans. Further, LES argues that Whitehurst is unable to demonstrate that the alleged harassment was sufficiently frequent, severe, physically threatening or humiliating, or that the conduct affected Whitehurst's job performance or attendance. Id. at 20-22.

To establish a prima facie case of hostile work environment discrimination, a plaintiff must show that: "(1) he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working

---

[20] The allegation in paragraph 9.a. is slightly different: "The managers being (2) White-Gay males, in which the (2) White-Gay males treated similarly situated employees outside Plaintiff protected class more favorably than Plaintiff." Complaint ¶ 9.a. The allegations in paragraphs 9.h.-j. also reference "corporate (Human-Resources)" and "[t]he corporate office (Human-Resources)." Id. ¶ 9.h.-j.

environment; and (5) that the employer is responsible for such environment under either a theory of vicarious liability or direct liability." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); see also e.g. Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999). A hostile work environment claim requires "proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Shockley v. HealthSouth Central Ga. Rehab Hosp., 293 F. App'x 742, 746 (11th Cir. 2008) (quoting Miller, 277 F.3d at 1275). Workplace conduct is not "'measured in isolation,'" but rather is considered "both cumulatively and in the totality of the circumstances." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (citation omitted). "Either severity or pervasiveness is sufficient to establish a violation of Title VII." Id. (emphasis in original); see also Blackmon v. Wal-Mart Stores East, L.P., 358 F. App'x 101, 102 (11th Cir. 2009) ("[w]hether harassing conduct is sufficiently severe or pervasive to alter the terms and conditions of a plaintiff's employment includes an objective and a subjective component"); cf. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"). The touchstone of a hostile work environment claim is the presence of severe or pervasive harassment based on a protected characteristic. See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000) (noting that the requirement of severe or pervasive conduct "is the element that tests the mettle of most . . . harassment claims"), abrogated on other grounds as recognized by Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008) (citation omitted).

In the instant case, summary judgment is due to be granted on Whitehurst's hostile work environment claim because Whitehurst has failed to satisfy the third element of his prima facie case: that the alleged harassment amounts to discrimination because of sex. Title VII prohibits "discriminat[ion] . . . because of . . . sex," see 42 U.S.C. § 2000e-2(a)(1), which includes workplace sexual harassment where "the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex[,]" Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998).  In Oncale, the Supreme Court noted the difficulties presented by the third element of a hostile environment claim where, as here, the alleged perpetrators and the plaintiff are of the same sex.  See id. at 80.  While recognizing that "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations," the Supreme Court identified in dicta three ways to prove that same-sex sexual harassment occurred "because of sex": (1) "if there were credible evidence that the harasser was homosexual" or that the harassing conduct was motivated by actual homosexual desire; (2) if the harassment occurs "in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility [towards members of the same sex] in the workplace[;]" and (3) if there is "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."  Id. at 80-81; see also Davis v. Coastal Int'l Sec., Inc., 275 F.3d 1119, 1123 (D.C. Cir. 2002); Mowery v. Escambia Cnty. Utils. Auth., No. 3:04CV382-RS-EMT, 2006 WL 327965, at *3 (N.D. Fla. Feb. 10, 2006).  "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not

merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] . . . because of . . . sex." Oncale, 523 U.S. At 81 (emphasis in original).

Here, Whitehurst has adduced no evidence that the alleged harassment by Coates and LaBell was based upon sex.  First, despite his personal belief or opinion, Whitehurst points to no evidence that either Coates or LaBell are actually homosexuals.  When asked in his deposition what made him believe Coates and LaBell were gay, Whitehurst responded that he had seen them "exemplifying feminine characteristics" including "[t]alking nose to nose" with each other while Coates sat on a desk with LaBell between his legs, and walking around the LES facility "twisting all in each other's face."  Whitehurst Dep. at 52-53.  However, Whitehurst also testified that other than his own complaints, he never saw Coates and LaBell "act in a sexual manner towards any men on the job site[.]" Id. at 53-54.  Further, Turovsky testified that "[d]uring the time that I worked with Mr. Coates and Mr. LaBell, I saw no evidence, and heard no comments from others that either man was gay." Turovsky Decl. ¶ 14.  Additionally, while Whitehurst's claim is based on four incidents of undoubtedly inappropriate physical contact by Coates and LaBell, no reasonable juror would believe that Coates's and LaBell's actions towards Whitehurst were motivated by homosexual desire. See Mowery, 2006 WL 327965, at *4 (finding that the plaintiff "does not allege, nor can it be properly inferred, that [the alleged harasser] or any of [the plaintiff's] co-workers were motivated by actual homosexual desire for [the plaintiff]"); cf. Smith v. Pefanis, 652 F. Supp. 2d. 1308, 1325 (N.D. Ga. 2009) (finding that the plaintiff had presented sufficient evidence to establish that he was harassed based on his sex because it was "undisputed" that the alleged harasser was homosexual).  Indeed, the record evidence, including Whitehurst's own

testimony, demonstrates that Coates's and LaBell's alleged harassment was motivated by "revenge" for Whitehurst's earlier complaint to Turovsky, which resulted in Coates being sent to an unfavorable work assignment in New Orleans, not his sex.  <u>See</u> Kellett Decl., Ex. B at 3 ("WHEREFORE, the motive for all of the above and described, was clearly revenge[.]"); <u>see</u> Whitehurst Dep. at 103-04.

Next, Whitehurst has not alleged, nor can it be inferred from the evidence, that either Coates or LaBell was generally hostile towards men.  In fact, Whitehurst conceded that he never saw Coates or LaBell act in a sexual manner towards any other men on the job site and had only heard rumors of Coates and LaBell acting "abusive or rude or violent towards" other men at the job site.[21]  Whitehurst Dep. at 53-54; 87-88.

Last, Whitehurst has offered no "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."  <u>Oncale</u>, 523 U.S. at 80-81.  In the Complaint, Whitehurst asserts multiple times that "[t]he managers being (2) White males, (2) White-Gay males treated similarly situated employees outside Plaintiff protected class more favorably than Plaintiff."  <u>See</u> Complaint ¶ 9.  However, Whitehurst fails to describe the specific "protected class" he is referring to, the basis on which such employees were "similarly situated," the manner in which they were treated more favorably, or whether it was the "(2) White males" or "(2) White-Gay males" who were making such differentiations.

---

[21] Specifically, Whitehurst testified that he heard that Coates "cursed . . . out" a transport driver named Ryan and a co-worker named Jesse Pollard, but Whitehurst was unable to indicate what the cursing was about.  Whitehurst Dep. at 54; 87-88.

Accordingly, while the Court certainly does not condone Coates's and LaBell's alleged conduct, where Whitehurst himself has testified that Coates and LaBell were acting out of "revenge," no reasonable jury could conclude that such alleged harassment constitutes discrimination because of sex. See Davis, 275 F.3d at 1123 (determining that no reasonable jury could believe that the alleged harassers' "behavior amounted to sexual propostions" where the plaintiff's "own testimony conclusively show[ed] that [the alleged harassers] were motivated by a workplace grudge, not sexual attraction"). As such, even if Whitehurst's Complaint was timely filed, summary judgment is due to be entered in LES's favor as to his hostile work environment claim.[22]

### C.      Race and Gender Discrimination

As noted by LES in the Motion, Whitehurst's claims of race and gender discrimination are difficult to discern. See Motion at 2. Nevertheless, the Court will address the sufficiency of these claims. Title VII provides "that it is unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Holifield v. Reno, 115 F.3d 1555, 1561 (11th Cir. 1997) (quoting 42 U.S.C. §§ 2000e-2(a)(1)). A plaintiff may establish a Title VII discrimination claim through the introduction of direct or circumstantial evidence or through statistical proof of discrimination. Lee v. U.S. Steel Corp., 450 F. App'x 834, 839 (11th Cir. 2012) (citing Alvarez v. Royal Atl. Developers,

---

[22] Additionally, Whitehurst has not alleged a claim of retaliatory hostile work environment, a claim which the Eleventh Circuit recently joined every other Circuit Court of Appeals in recognizing. See Gowski v. Peake, 682 F.3d 1299, 1311-12 (11th Cir. 2012); see generally Complaint. Indeed, Whitehurst's Response unequivocally reflects his belief that his Complaint is one of sexual harassment, not a retaliatory hostile work environment.

Inc., 610 F.3d 1253, 1264 (11th Cir. 2010)).  Where the plaintiff relies on circumstantial evidence of discrimination, the Court applies the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Alvarez, 610 F.3d at 1264.  However, a plaintiff may also present "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  Edmond v. Univ. of Miami, 441 F. App'x 721, 723 (11th Cir. 2011) (citing Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)).

When relying on the McDonnell Douglas framework to support a claim of discrimination, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  A plaintiff establishes a prima facie case of discrimination under Title VII by showing: "(1) [he] is a member of the protected class; (2) [he] was subjected to adverse employment action; (3) [his] employer treated similarly situated white employees more favorably; and (4) [he] was qualified to do the job." McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008); see also Holifield, 115 F.3d at 1562.  "To make a comparison of the plaintiff's treatment to that of [an employee outside plaintiff's protected class], the plaintiff must show that he and the employees are similarly situated in all relevant respects." Holifield, 115 F.3d at 1562.  If a plaintiff cannot identify a similarly situated comparator who was treated more favorably than himself, "summary judgment is appropriate where no other evidence of discrimination is present."  Id.

If the plaintiff presents a prima facie case, that evidence "creates a presumption that the employer unlawfully discriminated against the employee," and the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse

employment action.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981);

Alvarez, 610 F.3d at 1264.  If the defendant meets this burden of production, the burden

shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful

discrimination and was not the "true reason for the employment decision."  Burdine, 450 U.S.

at 256;  Alvarez, 610 F.3d at 1264;  Holifield, 115 F.3d at 1565 ("the plaintiff has the

opportunity to demonstrate that the defendant's articulated reason for the adverse

employment action is a mere pretext for discrimination" (citing McDonnell Douglas, 411 U.S.

at 804)).  A plaintiff may satisfy this burden "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence."  Burdine, 450 U.S. at 256.

"Despite these shifts in the burden of production, the ultimate burden of persuasion remains

on the plaintiff to show that the defendant intentionally discriminated against [him]."  Alvarez,

610 F.3d at 1264.

### 1.    **Prima Facie Case**

Upon review, the Court finds that Whitehurst has failed to establish a prima facie case

of race or gender discrimination.  In the Complaint, Whitehurst alleges that "[t]his is a

diversity of actions [sic] brought for Race and Gender Discrimination pursuant to Title VII of

the Civil Rights Act of 1964[.]"  Complaint at 2.  The only allegation in the Complaint that

seems to reference a race or gender discrimination claim is Whitehurst's refrain that "[t]he

managers being (2) White males, (2) White-Gay males treated similarly situated employees

outside Plaintiff protected class more favorably than Plaintiff." Complaint ¶ 9.[23]  However, this assertion is nothing more than a bare allegation lacking evidentiary support.  As a black male, Whitehurst is a member of a protected class, and since LES terminated his employment, Whitehurst has suffered an adverse employment action.  However, he has failed to demonstrate that LES treated similarly situated white or female employees more favorably.  Indeed, the record evidence in the instant case demonstrates that LES treated Whitehurst exactly the same as his two white co-workers, Coates and LaBell.  See Stinson v. Pub. Serv. Tel. Co., 486 F. App'x 8, 10 (11th Cir. 2012) (affirming summary judgment on the African American plaintiff's disparate treatment claims where she "produced no evidence that she was treated different than similarly situated white employees").  LES terminated Coates at the same time as Whitehurst due to fighting and inappropriate behavior in the workplace.  See Turovsky Decl., Ex. F.  LES also terminated LaBell's employment at the

---

[23] Additionally, in his JHRC Complaint, Whitehurst asserts, "I was subjected to racist language by David S. Coates, referring to me as "BOY", or "SUNSHINE", instead of using my legal name[.]"  Kellett Decl., Ex. B at 2.  Further, in his Amended Charge Whitehurst states that "I believe I . . . was terminated because of my race, black."  Id., Ex. A at 1.

27

same time due to inappropriate behavior in the workplace. Id., Ex. G.[24] As such, Whitehurst fails to identify a genuine issue of fact for trial and summary judgment is appropriate.

### 2.    Non-Discriminatory Reason/No Pretext

While Whitehurst's failure to establish a prima facie case would be dispositive of his race and gender discrimination claims under Title VII, the Court determines that even if Whitehurst were able to satisfy his initial burden, summary judgment would be appropriate because LES has proffered a legitimate non-discriminatory reason for terminating Whitehurst, and Whitehurst has failed to point to evidence creating a genuine issue of material fact on the issue of pretext.  LES's Position Statement filed with the JHRC, as well as Whitehurst's termination letter, indicate that Whitehurst was terminated for fighting with Coates on LES property during work hours.  See Turovsky Decl., Ex. A at 4, Ex. E. Additionally, LES employees who witnessed the fight submitted statements affirming that Whitehurst engaged in a physical altercation with Coates.  See id., Exs. B-D.

Because the McDonnell Douglas framework requires only the production of a legitimate non-discriminatory reason for its employment decision, LES has satisfied this

---

[24] Further, to the extent Whitehurst relies upon the allegation that Coates called him "Boy" and "Sunshine" in order to support his race discrimination claim, these comments neither raise an inference of discrimination sufficient to support a prima facie case, nor do they constitute direct evidence of discrimination.  See Dixon v. The Hallmark Cos., 627 F.3d 849, 854 (11th Cir. 2010) ("Under Eleventh Circuit law, 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination.'").  Not only did Whitehurst fail to raise this allegation in his Complaint filed with this Court, but these comments were not made by a supervisor or decision-maker, were not made concurrently or close in time with Whitehurst's termination, and do not in any way refer to the termination of Whitehurst's employment. See Williamson v. Adventist Health Sys./Sunbelt, Inc., 372 F. App'x 936, 940 (11th Cir. 2010) ("To qualify as direct evidence of discrimination, we require that a biased statement by a decision-maker be made concurrently with the adverse employment event, such that no inference is necessary to conclude that the bias necessarily motivated the decision.").

burden, and Whitehurst must rebut these reasons head-on. "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely pretext for discrimination.'" Bojd v. Golder Assocs., Inc., 212 F. App'x 860, 862 (11th Cir. 2006) (quoting Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006)). "'If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.'" Id. (quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079,1088 (11th Cir. 2004)).  Indeed, at the pretext stage, "the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason is really a pretext for unlawful discrimination." E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272-73 (11th Cir. 2002) (quoting Burdine, 450 U.S. at 255-56).

"A reason is not pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." Lee, 450 F. App'x at 839 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)); see also Alvarez, 610 F.3d at 1267; Brooks, 446 F.3d at 1162-63.  Thus, Whitehurst's "burden is to show not just that [LES's] proffered reason[ ] for firing [him was] ill-founded but that unlawful discrimination was the true reason." Alvarez, 610 F.3d at 1267.  As to the first prong of the inquiry,

> To show pretext, [Whitehurst] must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason[ ] for its action that a reasonable factfinder could find [is] unworthy of credence."

Alvarez, 610 F.3d at 1265 (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).  "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."  Holifield, 115 F.3d at 1565; see also

29

Alvarez, 610 F.3d at 1266.  Thus, the question is whether LES terminated Whitehurst for non-discriminatory reasons, even if mistakenly or unfairly so, or instead was merely using Coates's and Whitehurst's fight "as cover for discriminating" against him because of his race or gender.  Alvarez, 610 F.3d at 1266.

Whitehurst stated in his Amended Charge that he "never fought Mr. Coates, just held him until help arrived."  Kellett Decl., Ex. A at 2.  However, "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules.  'Title VII addresses discrimination.'"  Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984) (emphasis omitted and citation omitted).  "Nor does the statute require the employer to have good cause for its decisions.  The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  Id.  Indeed, "'[a]n employer who fires an employee under a mistaken but honest impression that an employee violated a work rule is not liable for discriminatory conduct.'"  Hudson v. Blue Cross Blue Shield of Ala., 431 F. App'x 868, 869 (11th Cir. 2011) (quoting Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 (11th Cir. 1999)).  The "'sole concern is whether unlawful discriminatory animus motivated'" the termination.  Alvarez, 610 F.3d at 1266 (citation omitted).  The Court does not sit "as a 'super-personnel department,' and it is not [the Court's] role to second-guess the wisdom of an employer's business decisions - indeed the wisdom of them is irrelevant - as long as those decisions were not made with a discriminatory motive."  Id. (quoting Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000)).  "Ultimately, an employee must meet the employer's

stated reason 'head on and rebut it, and [the employee] cannot succeed by simply quarreling with the wisdom of that reason.'"   Joseph v. Columbus Bank and Trust Co., 447 F. App'x 110, 112 (11th Cir. 2011) (quoting Alvarez, 610 F.3d at 1266)).

Significantly, "where the employer produces . . . documentary evidence of misconduct . . ., an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence." Holifield, 115 F.3d at 1565. Additionally, "'[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions.'" Young v. Gen. Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988) (citation omitted).

Here, LES has produced documentary evidence supporting its assertion that it terminated Whitehurst for fighting in the workplace.  Whitehurst has adduced no evidence to rebut this evidence.  Instead, he alleges that "Defendants, on February 26, 2010, deliberately launched an [sic] life-threatening attack" and asserts that he was terminated under "false pretenses." Complaint ¶¶ 9.g., 9.j.  The relevant inquiry, however, is limited to whether LES believed that Whitehurst was guilty of the misconduct, and if so, whether that was the reason behind the discharge.  The question is not whether Whitehurst actually engaged in the misconduct, or whether the employees who witnessed the fight were "lying through their teeth." See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

Whitehurst has failed to submit any evidence suggesting that LES's proffered reasons were "unworthy of credence, or that [LES was] more likely motivated by a discriminatory

reason" when it terminated Whitehurst.  <u>Holifield</u>, 115 F.3d at 1565.  Although Whitehurst

claims he was "falsely accused" of fighting with Coates, <u>see</u> Kellett Decl., Ex. A at 2, "the

pretext inquiry centers upon the employer's beliefs, not the employee's own perceptions."

<u>Hudson</u>, 431 F. App'x at 870.   The undisputed evidence establishes that LES had a good

faith belief that Whitehurst and Coates fought in the workplace.  Indeed, while Whitehurst

contends that his actions were not inappropriate, he has pointed to no evidence suggesting

that LES did not actually believe that Whitehurst engaged in a physical altercation with

Coates.

> Nor has Whitehurst presented evidence suggesting that his firing was discriminatory,

as required by the second prong of the pretext inquiry.  Beyond his bare allegation in the

Complaint that the "managers . . . treated similarly situated employees outside Plaintiff

protected class more favorably than Plaintiff"and his allegation in the JHRC Complaint that

Coates called him "Boy" and "Sunshine,"  Whitehurst has produced no evidence which could

in any way be construed to relate to his race or gender.  Due to Whitehurst's inability to

establish a <u>prima facie</u> case or to rebut LES's legitimate explanation for its actions, LES is

due to be granted summary judgment on Whitehurst's claims of race and gender

discrimination.

> **D.     Retaliation**

> As with Whitehurst's race and gender discrimination claims, Whitehurst's retaliation

claim, if any, is difficult to identify.  In the Complaint, Whitehurst alleges that "[t]his is a

diversity of actions [sic] . . . relating to retaliatory conduct[.]" Complaint at 2.  Whitehurst

asserts that "Defendants is [sic] responsible for the actions of its manager, supervisors . . .

for the deliberate actions of its employees in causing extreme hostile work environment, in retaliation to harm Plaintiff." Id. ¶ 9.  He alleges that "Defendant deliberately failed to provide a safe and reasonable care, by putting Plaintiff in harms-way, by forcing Plaintiff to be in fear of Plaintiff life [sic] from retaliation by the (2) White males, and (2) White-Gay males in fear of losing their employment[.]" Id. ¶ 9.i.  Whitehurst also alleges that he has suffered "a loss of capacity for the enjoyment of life from the life-threatening incident from the retaliation[.]" Id. ¶ 10.  Additionally, in his Amended Charge, Whitehurst alleges that "I believe I . . . was terminated . . . in retaliation for filing an internal complaint regarding the harassment." Kellett Decl., Ex. A at 1.

Under Title VII an employer is prohibited from retaliating against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."  See Crawford, 529 F.3d at 970.  As with a substantive race discrimination claim, if an employer articulates legitimate reasons for its actions, a plaintiff must then "'show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct.'"  See McCann, 526 F.3d at 1375 (quoting Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999)).  To establish pretext, a plaintiff must demonstrate "'such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Id. (quoting Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004)).  "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008).  Additionally, the Supreme Court recently clarified that a Title VII plaintiff must demonstrate "but-for" causation to sustain a retaliation claim.  Univ. of Tex. Sw. Med. Ctr. v. Nassar, —— U.S. ——, 133 S.Ct. 2517, 2533 (2013).  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id.

Significantly, an employment action is "materially adverse" in the retaliation context if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotations omitted).  However, the Supreme Court instructs that Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm," such that "petty slights, minor annoyances, and simple lack of good manners" are generally not sufficient.  Burlington, 548 U.S. at 67-68.  Therefore, while it is usually for the jury to decide whether an employer's actions are materially adverse, petty and trivial actions are not sufficient.  Rainey v. Holder, 412 F. App'x 235, 238 (11th Cir. 2011) (citing Crawford, 529 F.3d at 974 n.13)); Foshee v. Ascension Health-IS, Inc., 384 F. App'x 890, 892-93 (11th Cir. 2010).

Although not alleged in the Complaint, in the Amended Charge, Whitehurst asserts that he was "terminated . . . in retaliation for filing an internal complaint regarding the harassment[.]" Kellett Decl., Ex. A at 1. Indeed, Whitehurst filed an internal complaint with his supervisor, McDonald, on Monday, February 22, 2010. However, it appears that Whitehurst's additional allegations regarding "retaliation" reference the alleged harassment by Coates and LaBell following Whitehurst's January 2010 complaint to Turovsky concerning Coates's cursing and yelling. Nevertheless, the Court need not decide whether Whitehurst has established a prima facie case of retaliation, because, as discussed above, LES has satisfied its burden of producing a legitimate non-discriminatory reason for Whitehurst's termination, and Whitehurst has failed to demonstrate that this reason is a pretext for prohibited retaliatory conduct. See McCann, 526 F.3d at 1375. Due to Whitehurst's inability to rebut LES's legitimate explanation for its actions, LES is due to be granted summary judgment on Whitehurst's claim of retaliation.

## V.   Conclusion

Under Title VII, a plaintiff must file his civil complaint within 90 days of receiving a notice of right-to-sue letter from the EEOC. See 42 U.S.C. § 2000e-5(f)(1). Because Whitehurst has failed to bear his burden of establishing that he met the 90 day filing requirement, summary judgment as to all of his claims on that basis is appropriate. See Curry, 2013 WL 2039091, at *2. However, the Court has addressed the merits of Whitehurst's claims and found summary judgment proper as to each. Whitehurst failed to establish a prima facie case of hostile work environment discrimination under Title VII. Additionally, he failed to establish a prima facie case of race or gender discrimination under

35

Title VII.  Even if he had established a prima facie case of either discrimination or retaliation,

Whitehurst failed to demonstrate that LES's legitimate reason for terminating him is merely

a pretext for unlawful discrimination or retaliation.

Accordingly, it is **ORDERED**:

1.      Defendant Liquid Environmental Solution's Corporation's Motion to Dismiss

under Federal Rule of Civil Procedure 12(c) or, Alternatively, for Summary Judgment under

Rule 56(a) (Doc. 42) is **GRANTED**.

2.      The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant

Liquid Environmental Solutions, Inc., a/k/a Industrial Water Services, Inc., and against

Plaintiff Darryl M. Whitehurst as to Plaintiff's claims under Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000, et seq.

3.       The Clerk of Court is further directed to terminate any remaining pending

motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 10th day of September 2014.

**MARCIA MORALES HOWARD**
United States District Judge

lc18

Copies to:

Pro Se Parties
Counsel of Record

36